# Exhibit 4
*Motion to Extend Deadlines*

## **EMPLOYMENT AGREEMENT**

THIS EMPLOYMENT AGREEMENT (the "Agreement") made effective the 27th day of March, 2017 (the "Effective Date"), by and between Zpacez, LLC a Florida Limited Liability Corporation, (hereinafter called the "Corporation"), and Amalia Logunova (hereinafter called the "Employee"), whose residence address is 1105 Reserve Ct. #202, Naples, FL 34105.

W I T N E S S E T H:

In consideration of the covenants and agreements herein contained and the moneys to be paid hereunder, the Corporation hereby employs the Employee and the Employee hereby agrees to perform services as an employee of the Corporation, upon the following terms and conditions:

1.  <u>Duties of Employee</u>.  The Employee is hereby employed by the Corporation to render services on behalf of the Corporation as Chief Administrative Officer.  The Employee has also agreed to serve as President of a newly acquired company ATO Golden Construction Corp., which is wholly owned by the Corporation.

    (a)  The Corporation shall cause the Employee shall take temporary ownership of ATO Golden Construction Corp., and Zpacez, LLC from the current owners during the current project located TM Alexander Buildings, 1400 NW 19th Street, Miami, FL 33125 ("Civic Senior Tower") and 1855 NW 14th Avenue, Miami, FL 33125 ("Civic Tower") to eliminate any potential conflict of interest concerns during the course of the projects.

    (b)  Upon completion of the Civic Senior Tower and Civic Tower projects, or notice from the Robert Patrick Mick, Employee shall voluntarily relinquish control and ownership of ATO Golden Construction Corp., and Zpacez, LLC to the original owners.  During the

Employee's temporary ownership of the Corporation, Employee may not amend or alter this agreement.  Moreover, Employee shall consult with Robert Patrick Mick on all matters regarding the operation of the Corporation beyond the scope of the duties outlined herein.

~~2.~~     <u>Devotion of Time to Employment</u>.  The Employee shall devote the Employee's best efforts and substantially all the Employee's working time to performing the duties outlined in Section 1 for the Corporation. Reasonable amounts of time may be allotted to personal or outside business, charitable and professional activities and shall not constitute a violation of this Agreement provided such activities do not materially interfere with the services required to be rendered hereunder. ~~The Employee is expected to work 40 hours per week and if Employee is required by Corporation to work more than 40 hours, then Corporation shall compensate the Employee at a rate of 1.5 times her current hourly rate as computed based on Employee's then current yearly salary, which is based on a 40 hour work week.~~

3.     <u>Compensation</u>.

(a)     <u>Salary</u>.  The Corporation shall pay to the Employee, as compensation for the Employee's services, an annual salary in the amount of $91,000, payable weekly in accordance with the Corporation's normal payroll periods and procedures, which salary may be increased from time to time by resolution of the Corporation. The Corporation shall withhold from Employee's salary and any bonus payments pursuant to Section 3(b) hereinbelow federal, state and local employment withholding taxes as required by law, rule or regulation and in accordance with Employee's Form W-4.

(b)     <u>Bonus</u>.  The Employee shall receive additional compensation, an annual or more frequent bonus in the form of cash may be paid to the Employee if the Employee has

substantially contributed to the success of the Corporation during such year.  Whether or not such bonus shall be paid to the Employee in any given year, and, if so, the amount thereof shall be within the sole discretion of the Corporation.

(c) <u>Profit Sharing</u>.  In addition to the Employee's annual salary described in Section 3(a) hereinabove and Bonus in Section 3(b), the Corporation shall pay Employee an annual profit sharing in an amount equal to five percent (5%) of the actual net profits of the Ecolific Technologies LLC, Abide Systems, Chilled Air, Zpacez LLC, Level Z Contracting, Level Z Carpentry, ATO Golden Construction, Corp., for the fiscal year for which the profit sharing is being calculated.

(d) <u>Rules</u>.  In calculating the annual bonus and profit sharing, the following rules shall be applicable:

(i) The fiscal year to be applied for purposes of calculating the initial bonus shall commence on the Effective Date and, with regard to bonuses for subsequent years, on anniversaries of the effective date.

(ii) Any bonus or profit sharing due Employee shall be paid at such time as the Corporation shall determine within its sole discretion, but in no event shall such bonus or profit sharing be paid later than ninety (90) days after the end of the fiscal year for which the bonus is being calculated.

(iii) In the event the Employee's employment with the Corporation is terminated at any time prior to the end of a bonus fiscal year, whether the termination is voluntary or involuntary, or with or without cause, the Employee shall not be entitled to receive any bonus which he might otherwise have received pursuant to this Section 3(b) for the fiscal year during which the Employee's employment was terminated.

4. <u>Term of Agreement</u>.  The commencement date of the term of this Agreement shall be the Effective Date first set forth above, and it shall continue in effect until the earlier of:

(a) The effective date of any subsequent employment agreement between the Corporation and the Employee;

      (b)    The effective date of any termination of employment as provided elsewhere herein;

5.    <u>Reimbursable Expenses</u>.  In the event the Employee provides receipts and other appropriate documentation in accordance with the Corporation's policies and procedures and the rules and regulations of the Internal Revenue Code, the Corporation shall reimburse the Employee for (or, in the Corporation's sole discretion, directly pay) the following expenses:

      (a)    All supplies and professional equipment, as approved in writing in advance by the Corporation's Board of Directors.

      (b)    Health, dental and life insurance for the Employee in accordance with the Corporation's normal practices, as may be changed from time to time.  At the Effective Date, the Corporation does not have health, dental, or life insurance, but intends to provide it to the Employee.

      (c)    Any expenses incurred by the Employee in or about the course of the Employee's employment with the Corporation, as approved by the Corporation in writing in advance.

6.    <u>Policies and Procedures</u>.  The Corporation shall have the authority to establish from time to time the policies and procedures to be followed by the Employee in performing services for the Corporation.

7.    <u>Paid Leave</u>.  The Employee shall be entitled to two (2) weeks' paid leave per year for vacation and personal purposes, in addition to six (6) days of personal time of paid time off.

The Employee shall not be entitled to carry forward or be compensated for any paid leave which Employee fails to utilize during each fiscal year of the term of this Agreement.

8. <u>Sick Days</u>. The Employee shall be entitled to six (6) days' off for sick time per year.

9. <u>Termination of Agreement</u>.

(a) <u>Voluntary Termination</u>. Either the Employee or the Corporation may voluntarily elect to terminate this Agreement at any time during its effective term provided that the party electing to terminate must deliver to the other party written notice of such intention to terminate at least sixty (60) days prior to the date upon which termination is desired. Termination of employment by the Employee without notice as provided for herein shall constitute a violation of this Agreement; provided, however, that the Corporation and the Employee may mutually agree upon a termination at any time. In the event Employee voluntarily terminates employment with the Corporation without giving sixty (60) days' notice to the Corporation, the Employee shall not be entitled to receive any bonus which might otherwise have been provided under Section 3(b) hereinabove.

(b) <u>Termination for Cause</u>. The Corporation may terminate this Agreement at any time without notice if the Employee becomes unfit to properly perform the anticipated services on behalf of the Corporation because of any good and sufficient cause, which term shall include but not be limited to:

(i) failure of the Employee to promptly and satisfactorily perform the duties assigned to the Employee hereunder, such performance to be judged in the sole discretion of the Corporation;

5

      (ii)    conviction of any crime of moral turpitude, or the engaging by Employee in any illegal or criminal affairs, in the sole judgment the Corporation;

      (iii)    any legal restriction on Employee's right to render professional services contemplated hereunder;

      (iv)    if the Employee violates any provision of this Agreement, is given written notice thereof, and such violation is not corrected to the satisfaction of the of the Corporation within five (5) days after the delivery of such notice to Employee;

Such termination shall be effective upon the delivery of written notice thereof to the Employee or at such later time as may be designated in said notice, and the Employee shall vacate the offices of the Corporation on or before such effective date.

    (c)    <u>Compensation and Benefits After Notice of Termination</u>.  After notice of termination has been given by either Corporation or Employee, as provided in Subsection (a) or (b) of this Section 11, Employee shall be entitled to receive the salary provided for in Section 3(a) of this Agreement until the notice period has expired, at which time Employee will receive no further salary or benefits under this Agreement. The Employee's bonus entitlements following any termination of employment are described in Sections 3(b) and 11(a) hereinabove. It is understood that after the written notice is given by either Corporation or Employee, Employee shall continue to devote substantially all of the Employee's time to the Employee's normal services for the Corporation during the notice period, with sufficient time allowed, in the sole discretion of the Corporation, for Employee to seek new employment.

10.    <u>Disability of the Employee</u>.

    (a)    <u>Definitions</u>.  For purposes of this Agreement, whenever used in this Section 13:

6

      (i) The term "total disability" shall mean that the Employee is unable, mentally or physically, whether it be due to sickness, accident, age or other infirmity, to engage in any aspect of the Employee's normal duties as set forth in Section 1 above.

      (ii) The term "partial disability" shall mean that the Employee is able to perform, to some extent, on behalf of the Corporation, the particular services in which the Corporation specializes, and which the Employee previously performed for the Corporation, but that the Employee is unable, mentally or physically, to devote the same amount of time to such services as was devoted prior to the occurrence of such sickness or accident.

    (b) <u>Total and/or Partial Disability</u>.  In the event Employee becomes totally or partially disabled during the term of this Agreement, then this Agreement shall immediately terminate simultaneous upon the commencement of such total or partial disability.  Employee hereby acknowledges and agrees that the Corporation shall not provide any disability compensation and/or disability income insurance coverage for Employee's benefit.  Accordingly, Employee is urged to obtain, at Employee's sole expense, such disability income insurance coverage as Employee deems appropriate for the protection of Employee's interests.

    (c) <u>Death of Employee</u>.  In the event the Employee shall die during the term hereof, then the Employee shall be deemed to have voluntarily terminated this Agreement on the date of death and the Corporation shall pay to the Employee's surviving spouse, or if the Employee shall leave no surviving spouse, then to the Employee's estate, such amounts as may have been earned by the Employee prior to the Employee's date of death, but which were unpaid at date of death.

  11. <u>Dissolution of Corporation</u>.  In the event the Corporation should be dissolved during the period of time the Corporation is obligated to make payments to the Employee, the Employee's spouse or the Employee's estate hereunder, the balance of the payments due or to

7

become due hereunder shall be considered a debt of the Corporation and shall not be discharged by reason of such dissolution.

    12.    <u>Restrictive Covenants</u>.

    (a)    <u>Competitive Business</u>.  INTENTIONALLY DELETED

    (b)    <u>Hiring</u>.  The Employee agrees that during the Employee's employment with the Corporation and for a period of two (2) years following the termination of the Employee's employment with the Corporation, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, the Employee will not hire or attempt to hire any other employee of the Corporation or otherwise encourage or attempt to encourage any other employee of the Corporation to leave the Corporation's employ.

    (c)    <u>Confidentiality; Disclosure; Proprietary Information</u>. Employee recognizes and acknowledges that all records, documents, customer, supplier, and distributor lists, referral sources, financial information, trade secrets, methods, techniques, processes, marketing and acquisition strategies and plans, intellectual property (regardless of whether patentable or copyrightable), formulas, computer print-outs and other information of any kind, whether or not complete and whether or not reduced to writing (collectively, the "Confidential Information"), obtained by Employee with regard to the Corporation during the course of the Employee's employment by the Corporation, and not generally known in the public domain, constitutes valuable, special and unique and proprietary assets of the Corporation's business.  The Employee agrees that during the Employee's employment with the Corporation and following the termination of the Employee's employment, whether the termination shall be voluntary or

8

involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, the Employee will not at any time, directly or indirectly, disclose, disseminate, publish or permit the disclosure, dissemination or publication of any Confidential Information, to or for any other person, group, firm, corporation, association or other entity, or utilize the same for any reason or purpose whatsoever other than for the benefit and at the request of the Corporation.  Upon termination of this Agreement, or at any time upon the request of the Corporation, the Employee shall promptly deliver to the Corporation all memoranda, notes, records, reports, manuals, drawings, blue prints, formulas and other documents (and all copies thereof) relating to the business of the Corporation and all property associated therewith, then possessed or under the control of the Employee.

(d)     <u>Solicitation</u>.  The Employee further agrees that during the Employee's employment with the Corporation and following the termination of the Employee's employment with the Corporation, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, the Employee will not, in any manner or at any time, solicit or encourage any person, firm, corporation or other business entity who are customers, suppliers, or distributors, business associates or referral sources of the Corporation, and/or other employees of the Corporation, to cease doing business with the Corporation and/or other employees of the Corporation.

(e)     <u>Venue; Court Proceedings</u>.  Employee and Corporation hereby agree that the venue of any action, proceeding, counterclaim, crossclaim, or other litigation relating to, involving, or resulting from the enforcement of this covenant shall be in Miami-Dade County, Florida

(f) Indemnification. The Employee hereby agrees to indemnify and hold the Corporation and/or other employees of the Corporation harmless from and against any losses, claims, damages or expenses, and/or all costs of prosecution or defense of their rights hereunder, whether in judicial proceedings, including appellate proceedings, or whether out of court, including without limiting the generality of the foregoing, attorneys' fees, and all costs and expenses of litigation, arising from or growing out of the Employee's breach or threatened breach of any covenant contained herein.

(g) Survival of Covenants. All restrictive covenants contained in this Agreement shall survive the termination or expiration of this Agreement.

(h) Assignability. The Corporation may freely assign the Corporation's rights, duties and obligations under this Agreement, and the Corporation's assignee or successor shall have and enjoy all of such rights, duties and obligations.

13. Limitations on Authority. Without the express written consent from the Corporation, the Employee shall have no apparent or implied authority to:

(a) Pledge the credit of the Corporation or any of its other employees;

(b) Bind the Corporation under any contract, agreement, note, mortgage or otherwise;

(c) Release or discharge any debt due the Corporation unless the Corporation has received the full amount thereof; or

    (d)    Sell, mortgage, transfer or otherwise dispose of any assets of the Corporation.

14.    <u>Representation and Warranty of Employee</u>.  The Employee acknowledges and understands that the Corporation has extended employment opportunities to Employee based upon Employee's representation and warranty that Employee is in good health and able to perform the work contemplated by this Agreement for the term hereof.

15.    <u>Invalid Provision; Severability</u>.  The invalidity or unenforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.  The provisions of this Agreement are severable and the invalidity of any one (1) or more of such provisions or any part thereof does not affect or limit the enforceability of the remaining provisions or parts thereof of this Agreement.

16.    <u>Entire Agreement; Modification; Headings</u>.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof, and all representations, promises and prior or contemporaneous understandings relating to the Employee's employment by the Corporation are merged into and expressed in this Agreement.  No change, amendment, supplement or modification of this Agreement shall be valid unless the same be in writing and signed by the parties hereto.  The section headings in this Agreement are solely for convenience of reference and shall not affect the interpretation or construction of the terms and provisions hereof.

17.    <u>Applicable Law and Binding Effect; No Waiver</u>.  This Agreement shall be construed and regulated under and by the laws of the State of Florida, and shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, personal

representatives, successors and assigns; provided, however, that the Employee may not assign, delegate or otherwise transfer any rights or obligations arising hereunder without the prior written consent of the Corporation.  No failure on the part of either party hereto at any time to require the performance by the other party of any term of this Agreement shall be taken or held to be a waiver of such term or in any way affect such party's right to enforce such term, and no waiver on the part of either party of any term of this Agreement shall be taken or held to be a waiver of any other term hereof or the breach thereof.

18. Notices.  Any and all notices or other communication provided for herein, shall be given by registered or certified mail, return receipt requested, in case of the Corporation to its principal office, and in the case of the Employee to the Employee's residence address set forth on the first page of this Agreement or to such other address as may be designated by the Employee.

19. Attorneys' Fees.  In the event that either party is required to engage the services of legal counsel to enforce the terms and conditions of this Agreement against the other party, regardless of whether such action results in litigation, the prevailing party shall be entitled to reasonable attorneys' fees, costs of legal assistants, and other costs from the other party, which shall include any fees or costs incurred at trial or in any appellate proceeding, and expenses and other costs, including any accounting expenses incurred.

20. Survival.  The provisions of this Agreement which, by their express or implicit terms, are intended to survive the termination or expiration of this Agreement, shall survive such termination or expiration and be enforceable.

IN WITNESS WHEREOF, the undersigned parties hereby execute this Agreement on the ____ day of _____, 2017 to be effective as of the Effective Date first set forth above.

CORPORATION:

_____,

Witnesses as to Employee:          EMPLOYEE:

| | |
|---|---|
| **From:** | Robert Mick <mick@petevicari.com> |
| **Sent:** | Thursday, May 4, 2017 11:39 AM |
| **To:** | Amalia@atogolden.com |
| **Subject:** | sig |
| **Attach:** | Employment Agreement Sig Page.pdf |

**Mr. R. P. Mick**, CCM, PMP
Senior Project Manager

Civic Towers Restoration
mick@petevicari.com
M: 786.431.4300

Pete Vicari General Contractor LLC
1900 Destrehan Avenue
Harvey, La  70058
504-347-1196 Office
504-347-1522 Fax
www.petevicari.com

IN WITNESS WHEREOF, the undersigned parties hereby execute this Agreement on the 25th day of __APRIL__, 2017 to be effective as of the Effective Date first set forth above.

CORPORATION:

_[signature] 4/20/17_

Witnesses as to Employee:

_[signature]_

_[signature]_

EMPLOYEE:

_[signature]_

AMALIA LOGUNOVA

13

IN WITNESS WHEREOF, the undersigned parties hereby execute this Agreement on the 25th day of APRIL, 2017 to be effective as of the Effective Date first set forth above.

CORPORATION:

_[signature] Mich, 4/20/17_
MGM, MBR

Witnesses as to Employee:                    EMPLOYEE:

_[signature]_                                _[signature]_
_[signature]_                                AMALIA LOGUNOVA