UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

A.T.O. GOLDEN CONSTRUCTION
CORP., a Florida corporation,

     Plaintiff/Counterclaim
     Defendant,

v.

ALLIED WORLD INSURANCE COMPANY,
a foreign insurance company,

     Defendant

v.

PETE VICARI GENERAL CONTRACTOR,
LLC, a foreign profit company,

     Defendant/Counter-claimant.
_____/

**Plaintiff, A.T.O. GOLDEN CONSTRUCTION CORP.'S
MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF JORGE AYALA**

     Plaintiff, A.T.O. GOLDEN CONSTRUCTION CORP. ("ATO"), by and through its undersigned counsel and pursuant to the Court's January 31, 2018 Order Setting Trial, Pre-Trial Conference, Discovery Deadline, and Motion Deadline [ECF 14], files its Motion in Limine to Exclude Opinion Testimony of Jorge Ayala and Confidential Proprietary Business Records of ATO, ZPacez, LLC ("ZPacez") and Ecolific Technologies, Inc. ("Ecolific"), and in support thereof states as follows:

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

## Introduction

On or around March 1, 2017, PVGC entered into two lump sum subcontracts with ATO for demolition and rough carpentry services on two Projects, Civic Towers and Civic Powers Senior. Pursuant to Article X(a) of the Subcontracts, PVGC shall pay ATO progress payments of the stipulated lump sums, as work progresses, so long as ATO's monthly payment applications provide detailed statements and percentage of completion estimates that ATO performed the previous month.[1] ATO is required to complete the contracted scope of work in the lump sum Subcontracts regardless of when completion occurs, so long as it adheres to the construction schedules.

From March 2017 through July 2017, PVGC approved and paid ATO for work submitted in payment applications 1 through 5. PVGC also approved ATO's payment application 6 from August 2017, as well as most of the amounts and completed work in payment application 7 from September 2017 and payment application 8 from October 2017.[2]

PVGC received payment from Owners for work ATO completed and billed to PVGC in payment applications 6 through 8. Pursuant to Article 9.6.2 of the AIA Document A201-2007 General Conditions of the Prime Contracts ("AIA A201 General Conditions of the Prime

---

[1] *See* Undisputed Facts at ¶7 for the language of Article X of the Subcontracts.
[2] The majority of ATO's owed amounts for payment application 8 includes the 10% retainage amounts of the Subcontracts as agreed upon by the parties; however, ATO performed and billed for additional work in payment application 8 that PVGC previously approved.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

Contract"), PVGC was required to pay ATO no later than seven (7) days after receipt of payment from Owners.[3] Despite providing assurances to ATO that payment was forthcoming, from August 2017 through October 2018, PVGC repeatedly refused and/or failed to pay ATO for any work completed in payment applications 6 through 8.

PVGC's egregious conduct of refusing to pay ATO as promised is exacerbated by PVGC's breaches of the AIA Document A102-2007 Standard Form of the Prime Contracts ("AIA A102 Standard Form Prime Contracts") with the Owners by refusing and/or failing to return any to Owners that PVGC received.[4]

PVGC attempts to circumvent and shift all liability for its obvious breaches of the Subcontracts (and Prime Contracts for that matter) by alleging nonperformance and overbilling in payment applications 6 through 8. PVGC conveniently remains silent as to the extensive payment application process ATO underwent to verify its estimated quantities and percentages of completion. Five independent entities each certified ATO's billed amounts, including ATO (before submitting to PVGC); PVGC (when it first reviewed the work); Owner's representative, CBRE, Inc.; architect, Perez & Perez Architects Planners, Inc.; and both Owners.

---

[3] AIA A201 General Conditions of the Prime Contract are incorporated by reference in Article I(d) of the Subcontracts. *See* Undisputed Facts at ¶4-6 for discussion.

[4] Article 12.1.12 of AIA A102-2007 General Conditions of the Prime Contracts requires PVGC to return any withheld monies back to the Owners within thirty (30) days from receipt of payment. *See* Undisputed Facts at ¶2. Accordingly, PVGC breached another contract, yet again.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

Moreover, PVGC scrutinized ATO's work by walking the Projects for hours and adjusted ATO's estimated percentages of completion and values, accordingly to work observed.

After payment was not forthcoming, ATO defaulted PVGC and terminated the Subcontracts.  on October 12, 2017, ATO demanded payment for past due amounts in its Notice of Default.  PVGC failed to tender past due amounts to ATO.  On October 17, 2017, ATO filed its Notice of Termination and unambiguously expressed its intent to pursue an action against Surety, Allied Insurance Company for breach of the payment bond.

Sometime in September 2017 or October 2017, in anticipation of imminent litigation, PVGC demanded Senior Project Manager, Jorge Ayala ("Ayala") create a spreadsheet reviewing ATO's previously approved percentages of completion for line items work and change orders in ATO's payment applications ("Completions Spreadsheets").  PVGC requested Ayala perform his evaluation despite being paid by Owners for ATO's completed work.  With absolutely no measurable data or methodology, Ayala unilaterally adjusted ATO's percentages of completion based on his belief and subjective observations made on the Projects.  Ayala even adjusted work that ATO completed before Ayala was ever on the Projects. PVGC hired Ayala in late August 2017, which was after ATO completed work in payment applications 1 through 6.  Up and through December 2017 (after the filing of this lawsuit), Ayala produced a multitude

of Completion Spreadsheets, <u>only</u> evaluating ATO's scope of work. *See Exhibit D.*

Almost four months after creating the first Completion Spreadsheet, on or around January 19, 2018, PVGC relied on Ayala's Completion Spreadsheets to retroactively create ATO payment applications for the October 2017 billing cycle. See Exhibit E. PVGC created October 2017 payment applications, <u>without providing notice to ATO and without approval,</u> in order to "provide" a credit to the Owners for work Ayala "believed" was not completed and overbilled, again with no supporting data or methodology. PVGC unilaterally reduced the CT and CTS Subcontracts by $130,004.17 and $94,297.08, respectively, despite PVGC previously approving the work, PVGC signing <u>each</u> of ATO's change order requests under payment applications 6 and 7 and receiving compensation for ATO's work by the Owners.

Currently, PVGC is embroiled in litigation with additional subcontractors on the Projects, Coastal Maintenance & Restoration, Inc. and Coastal Prefab, Inc. (collectively, "Coastals") in the case styled 1:17-cv-23733-CMA, *Pete Vicari General Contractor, LLC v. The Ohio Casualty Insurance Company d/b/a Ohio Casualty & Coastal Maintenance & Restoration, Inc. & Coastal Prefab, Inc.* ("Coastal Action"). The counsel representing PVGC in the Coastal Action also represent PVGC in the instant action. In the Coastal Action, PVGC puts forth similar, if not identical, allegations of

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

Coastal's nonperformance and also asserts an overbilling defense. PVGC properly retained an expert witness to opine as to Coastal's overbillings, pursuant to Fed. Rule of Evidence 702, and produced an expert report accordingly. *See* Exhibit F.  It is evident PVGC recognized what is required to substantiate a claim for a subcontractor's failure to complete work and estimate accordingly, yet PVGC fails to put forth the retained expert witness in the instant action despite the obvious overlap and commonality.  It seems to follow that PVGC's expert, well acquainted with Fed. Rule of 702, is unwilling and unable and to certify PVGC's allegations against ATO in light of the comprehensive payment application process and PVGC's repeated approvals.

    With no alternative, PVGC seeks to introduce lay witness and Senior Project Manager, Ayala opinion testimony and Completion Spreadsheets to prove ATO overbilled and failed to complete submitted work.  Both are inadmissible under Federal Rule of Evidence 701(c) because each relies on Ayala's technical and specialized construction skills to render conclusions.  Moreover, the Percentage Spreadsheets are inadmissible hearsay that do not fall under an exception, including failing to be a Record of Regularly Conducted Activity, pursuant to Federal Rule of Evidence 803(6).

    PVGC also seeks to introduce proprietary and confidential business records belonging to ATO and nonparties, ZPacez and

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

Ecolific. [7]  However, Allied nor PVGC have made <u>any</u> allegations in the pleadings relating to an alter-ego, ATO piercing the corporate veil or the like. The pleadings state nonparty, ZPacez is no more than the parent company of ATO and there is no mention of nonparty, Ecolific.  As a result, such documents are irrelevant because any information derived therefrom is not of consequence in determining the action, pursuant to Fed. Rule of Evidence 401(b).

Even if the evidence is somehow relevant, the business records of ATO, ZPacez and Ecolific should be excluded because their probative value are substantially outweighed by the danger of unfair prejudice, confusing the issue, misleading the jury, undue delay or wasting time, pursuant to Fed. Rule of Evidence 403.

<u>STATEMENT OF UNDISPUTED FACTS</u>

1.  Sometime before March 1, 2017, Owner, Civic Towers, LLLP entered into an AIA Document A102-2007 Standard Form Agreement with PVGC for the exterior and interior renovations of a 196-unit, 17 story residential apartment building located at 1855 NW 15 AVENUE Miami, Florida 33125 ("Civic Towers Prime Contract"). Similarly, sometime before March 1, 2017, Owner, Civic Towers

---

[7] PVGC and Allied relentlessly seek the confidential and business records belonging to ATO, ZPacez and Ecolific in different manners, such as Allied's First Request for Production, PVGC's First Request for Production; PVGC's nonparty Subpoena Duces Tecum to ZPacez, PVGC's Subpoena Duces Tecum on ATO former director, Robert Mick.  PVGC and Allied continue to seek confidential business records irrelevant to the claim at issue, including labor rates ZPacez charges its employees, shareholder member information, w-2's, accounting records, bank account records, and the like.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

Senior, LLLP entered into an AIA Document A102-2007 Standard Form Agreement with PVGC for the exterior and interior renovations for the improvement of a 151-unit, 18-story residential apartment building located at 1400 NW 19 STREET Miami, Florida 33125 ("Civic Towers Senior Prime Contract"), (collectively "Prime Contracts").

2.     Article 12.1.12 of the Prime Contracts provide, "[PVGC] shall not submit any Application for Payment which seeks payment for any Cost of Work payable to a Subcontractor or supplier that [PVGC] does not intend to pay to the Subcontractor or supplier [PVGC] determines to withhold payment from any Subcontractor or supplier, in whole or in part, [PVGC] shall promptly return such amount to the Owner[s] . . . [PVGC] shall return any amount withheld to the Owner[s] and not paid to the applicable Subcontractor or supplier within thirty (30) days after the amount was paid by the Owner[s] to the Contractor."

3.     On or around March 1, 2017, PVGC subcontracted with plaintiff, ATO for demolition and rough carpentry services on Civic Towers for a lump sum amount of $704,604.50 ("CT Subcontract"). On or around March 1, 2017, PVGC subcontracted with ATO for demolition and rough carpentry services on Civic Towers Senior for a lump sum amount of $463,659.11 ("CTS Subcontract") (CT and CTS Subcontracts, collectively "Subcontracts").

4.     Article I(d) of the Subcontracts is an incorporation by reference clause and provides, "AIA Document A201-2007 General

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

<u>Conditions</u> of the [Prime] Contract between Owners and [PVGC] attached hereto and incorporated herein by Exhibit A."[8]

5.    Article II(a) of the Subcontracts is <u>not</u> an incorporation by reference clause and provides, "[PVGC] shall have the same rights and privileges as against the Subcontractor as the Owner[s] in the General Contract has against [PVGC]. Subcontractor owes the same duties to [PVGC] that [PVGC] owes to the Owner[s] as such duties relate to the Work."[9]

6.    Article 9.6.2 of the AIA A201 General Conditions of the Prime Contracts provides, "[PVGC] shall pay each Subcontractor <u>no later than seven (7) days after receipt of payment from the Owner[s]</u> the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payment to [PVGC] on account of the Subcontractor's portion of the Work.

7.    Article X(a) of the Subcontracts provides, "payable as the Work progresses, on periodic estimates submitted to [PVGC] by [ATO] by percentage complete and corresponding payment from Owner

---

[8] The AIA Document **A201**-2007 General Conditions of the Prime Contracts are incorporated into the Subcontracts and distinct from the contractual provisions of the AIA Document **A102**-2007 Standard Form of the Prime Contracts, containing material pricing terms between Owners and PVGC.

[9] PVGC incorrectly interprets on Article II(a) of the Subcontracts as an incorporation by reference of the AIA Document A102-2007 Standard Form  but Article II(a) provides no reference to AIA Document **A102**.  Accordingly, PVGC's attempt to incorporate the inconsistent, material, pricing term of Article 5.1.4 of the AIA Document A102 Standard Form is irrelevant and does <u>not</u> limit ATO's overhead and profit to 14%.  Pursuant to Article IV(c) of the Lump Sum Subcontracts, "in the case of any conflict between the provisions of the [Subcontracts] and [Prime Contracts], . . . the provision of the Subcontracts shall prevail <u>in any matter </u>between [PVGC] and [ATO]."

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

(each such estimate is to be detailed statements of the Work done by [ATO] during the preceding month for [PVGC]'s and Architect's approval), after being approved by [PVGC] and Architect, and made only when payment is received from the Owner." *See* ECF 22-3 at 4.

8.    ATO, PVGC, CBRE, Perez & Perez, and both Owners must each certify and verify the amounts provided in ATO's submitted payment applications prior to PVGC receiving payment from Owners.

9.    ATO completed and PVGC paid ATO for most work under payment applications 1 through 5 but PVGC failed to provide <u>any</u> payment for completed work under payment applications 6 through 8 despite receipt of payment from Owners.

10.   On October 12, 2017— when payment was not forthcoming for payment applications 6 and 7 — ATO served PVGC its Notice of Default demanding payment for completed that PVGC approved.

11.   On October 17, 2017 ATO served PVGC a Notice of Termination, unambiguously conveying its intent to sue surety, Allied for unpaid amounts under the Subcontracts.

12.   Sometime before or on October 17, 2017, PVGC requested Senior Project Manager, Ayala begin to create a spreadsheet report concluding ATO's percentages of completion for each line item in ATO's payment applications in order to furnish the report to PVGC's counsel. *See* Exhibit A.

13.   On November 10, 2017, PVGC again requested Ayala to complete the Percentages of Completion Spreadsheet for PVGC's

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

counsel. *See* Exhibit B.

14.  On November 11, 2017, ATO filed suit against Allied for breach of the payment bonds for past due amounts under the Subcontracts.

15.  On December 4, 2018, Ayala provided PVGC reports for the CT Project quantifying ATO's completed work into percentages of completion and calculating its alleged value of work. *See* Exhibit D.

16.  Up through the end of December 2018 or early January 2018, Ayala provided PVGC additional Completions Spreadsheets and corrected drafts also adjusting ATO's previously approved percentages of completion included in payment applications. *See* Exhibit D.[10]

17.  On or around January 19, 2018, PVGC unilaterally created ATO October 2017 payment applications for the Projects, <u>without notice to ATO and without ATO's approval</u>, and adjusted ATO's approved work as provided in Ayala's Completion Spreadsheets. PVGC submitted the adjusted payment applications to Owners and allegedly provided credit for CT and CTS Projects for $130,004.17 and $94,297.08, respectively, despite Owners paying PVGC for ATO's completed work.

---

[10] Although there may be additional Completion Spreadsheets in PVGC's possession, some of the versions include but are not limited to, (1) CT Cha[n]ge Of Orders By ATO Golden;(2) CT ATO PUBLIC SPACES % OF COMPLETION; (3) CTS ATO Golden Existing C.O.s % Completed; (4) CTS ATO Public Spaces % of Completion; and (5) CTS Cha[n]ge of Orders by ATO Golden.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

18. On July 11, 2018, undersigned counsel took the deposition of Ayala. Ayala testified as to his opinion that the percentages of completion ATO provided in its submitted payment applications were inaccurate and overbilled.

**MEMORANDUM OF LAW**

I.   **Ayala's Percentages of Completion Spreadsheets and Deposition Testimony**

A. **Ayala's Deposition Testimony and Percentage Completion Spreadsheets should be excluded because they rely on Ayala's technical and specialized construction knowledge, in violation of Fed. Rule of Evidence 701.**

Federal Rule of Evidence 701 provides:

A witness who is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness' perception, (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

"[T]he purpose of this component of Rule 701 is 'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *See* Tampa Bay Shipbuilding & Repair Co. V. Cedar Shipping Co., 320 F.3d 1213, 1222 (11th Cir. 2003) (citing Advisory Comm. Notes to 2000 Amdt. to Fed. R. Evid. 701). The key question is whether the proffered testimony "results from

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

a process or reasoning 'familiar in everyday life' or instead requires mastery of a specialized field." See id.

"Thus, although Rule 701 allows a lay person to opine on matters based upon his "perception," id., or based upon 'the understanding and experience of the average citizen," see United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985), a lay person may not testify as to matters that require specialized knowledge." See Dunn v. Allstate Ins. Co., No. 2:04-CV-0205-RWS, 2008 WL 11407404, at *5 (N.D. Ga. Jan. 22, 2008) (citing Tampa Bay Shipbuilding & Repair Co. V. Cedar Shipping Co., 320 F.3d 1213, 1222 (11th Cir. 2003).

In this case, Ayala, as Senior Project Manager, was tasked to review ATO's completed work in payment applications and change orders submitted and approved by PVGC. To complete this task, Ayala drafted Completion Spreadsheets by observing the Projects and adjusting ATO's estimated percentages based on his subjective belief, without providing any measurable data or proper methodology. Instead, Ayala relied on his specialized construction knowledge to conclude ATO overbilled and failed to complete the previously approved work. Accordingly, Ayala's Completions Spreadsheets and related opinion testimony are to be excluded for exceeding the bounds of a lay witness testimony under Rule 701.

Ayala's Completion Spreadsheets are not mere day-to-day

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

observations of ATO's work on the Projects but are spreadsheets using a typical payment application format. The use of a payment application format, in itself, requires a specialized understanding to complete because the format implements technical understanding of how construction is quantified into percentages of completion. Payment applications contain categories to evaluate a subcontractor's work, including a breakdown of the hundreds of line items for the subcontractor, the percentage of completion for each line item[11], the percentages paid to subcontractors for each line item, the schedule of values for each line items, total value of work completed for each line item and amount paid to subcontractor for each line item.

Ayala's Percentages of Completion Spreadsheets mirror this format and includes an additional column for comments and some observations of ATO's work.[12] Despite short phrases of comments in the Completion Spreadsheets, the overall tone and substance is in numerical data of percentages and dollar figures representing the value of ATO's alleged work. As a result, Ayala's Spreadsheets are to be excluded under 701 for relying on specialized

---

[11] Ayala's Spreadsheets contain line items tasks an average lay person would not be familiar with because of a lack of construction experience, including identifying the tasks for "Staging Sheetrock Corrections," "Ceiling Blowout Repairs," or "Point and Parge Small North Side Block Wall at Electric Vault" just to name a few.

[12] The comments generally relate to whether a particular line item was approved by a PVGC superintendent, whether the job was completed, whether the scope of work was per PVGC's request and the like.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

construction knowledge despite Ayala having personally observed ATO's work. *See* City of Mountain Park, Georgia v. Lakeside at Ansley, LLC, No. 1:05-CV-2775-CAP, 2009 WL 10665812, at *3 (N.D. Ga. Oct. 5, 2009) (granting Plaintiff's Motion in Limine when Defendant offered affidavits "based almost entirely of opinions based upon on their **"specialized knowledge"** of **construction**, soil erosion, and prevention techniques" despite "contain[ing] personal knowledge or observations admissible under 701 because the overall tone, conclusory nature and substantive opinions are well within the realm of 702.")

Verifying ATO's percentage of completion required a thorough, specialized understanding of extrinsic factors unknown to a layperson's day-to-day observations, including the costs of labor, the complexity of demolition and installation services and external factors such as delay with other subcontractors of the Projects.[13] *See* Dunn v. Allstate Ins. Co., No. 2:04-CV-0205-RWS, 2008 WL 11407404, at *6 (N.D. Ga. Jan. 22, 2008) (concluding plaintiff failed to demonstrate how his lay opinion regarding the costs to repair a free-standing building and two canopy structures is based on his day-to-day knowledge when the testimony relied on specialized knowledge derived from past construction experiences,

---

[13] External factors include Ayala's knowledge of how Hurricane Irma delayed ATO's construction schedules, as well as delays caused by other subcontractors on the Projects, including but not limited to Coastal Construction and LLI to which there is current litigation pending for the substantial amounts of delays.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

including the "cost of construction materials, the cost of labor, the complexity of repair, external factors, and other factors affecting the price of construction.")

Most notably, the court in *Dunn* excluded Plaintiff's testimony *even when Plaintiff acted as the general contractor and observed damage first-hand* because "Plaintiff's opinion testimony is more apt to be admitted under Rule 702, and it falls within Rule 701's proscription on testimony based upon 'specialized knowledge.'") *See id.*

Accordingly, lay witness, Ayala's Completion Spreadsheets, PVGC's retroactively created October 2017 payment applications and related opinion testimony concluding ATO overbilled and failed to complete work are to be excluded for relying on technical and specialized construction knowledge. PVGC's retroactively created October 2017 payment applications (Ex. E) are to be excluded as a fruit of the poisonous tree, improperly incorporating Ayala's lay witness testimony in Completion Spreadsheets.

## II. Ayala's Percentages of Completion Spreadsheets are hearsay that are not records of regularly conducted activity but created in anticipation of litigation.

Hearsay is a statement that the declarant does not make while testifying in trial or at a hearing and that is offered in evidence to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). Hearsay is not admissible unless provided otherwise by a federal statute, the federal rules of evidence or

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

other rules prescribed by the Supreme Court. *See* Fed. R. Evid. 802.

"To be admissible as a business record, [heresay] evidence must satisfy the elements of both Rule 803(6) and be authenticated under Rule 901 or 902." <u>Harrington v. RoundPoint Mortg. Servicing Corp.</u>, No. 215CV322FTM38MRM, 2017 WL 1331072, at *3 (M.D. Fla. Apr. 11, 2017) (citing *United States v. Dreer*, 740 F.2d 18, 20 (11th Cir. 1984)).

Exception to Hearsay, Rule 803(6), Records of a Regularly Conducted Business Activity, states,

> [a] record of an act, event, condition, opinion, or diagnosis [is admissible] if: <u>(A) the records was made at or near the time by—or from information transmitted by—someone with knowledge</u>; <u>(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit</u>; <u>(C) making the record was a regular practice of that activity</u>; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; <u>and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.</u>

*see also PNC Bank, Nat. Ass'n v. Orchid Grp. Investments, L.L.C.*, 36 F. Supp. 3d 1294, 1301 (M.D. Fla. 2014); *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir.2006) ("The touchstone of admissibility under Rule 803(6) is **reliability**, and a trial judge

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

has broad discretion to determine the admissibility of such evidence.")(emphasis added).

In this case, Ayala's Completion Spreadsheets are hearsay because declarant, Ayala made the statements regarding ATO's alleged incomplete work and overbilling outside trial or hearing. The Completion Spreadsheets are being offered by PVGC to prove the contents of the Completion Spreadsheets, that ATO allegedly failed to complete work as represented and overbilled.

As hearsay, the Completion Spreadsheets are inadmissible because they do no fall within any exception, including 803(6), Records of Regularly Conducted Business Activity. The Completion Spreadsheets were not created near or at the time ATO completed the work on the Projects, pursuant to Rule 803(6)(A). Ayala created the Completion Spreadsheets from September 2017 through December 2017 which reviewed and adjusted ATO's previously approved work spanning back to March 2017 (the date of the first approved payment application). ATO completed and was paid for a majority of its work when Ayala created Completion Spreadsheets. Ayala also did not personally observe ATO completing a majority of the previously approved work under payment applications 1 through 6, as Ayala began employment with PVGC in August 2017.

The Completion Spreadsheets were created in anticipation of litigation, upon PVGC's express request <u>for PVGC attorneys</u>. *See Ex. A.* ATO demanded payment for past due amounts and unambiguously

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

expressed its intent to sue for unpaid amounts by the time PVGC requested Ayala to created Completion Spreadsheets.[14]   No Completion Spreadsheets were created before the threat of imminent litigation.   As a result, the Completion Spreadsheets were not kept in the course of a regularly conducted activity of business, pursuant to Rule 803(6)(B).

It is not a regular practice of PVGC, or <u>any</u> general contractor, to start a new review of a subcontractor's work after approving and receiving payment from Owners for the completed work. PVGC's repetitive assessment is unique to ATO's performance due to apprehension of imminent litigation, and fails to satisfy Rule 803(6)(C) accordingly.

Moreover, Ayala fails to show how the source of information, the method or circumstances in preparing percentage adjustments indicate any trustworthiness or reliability, as required by Rule 803(6)(D). Ayala adjusted ATO's previously approved percentages of completion by first conducting an alleged survey of every floor and making subjective notes regarding observed work.  Ayala then altered his notes by quantifying his observations into numerical values to be entered into Completions Spreadsheets, such as specific percentages of completion and dollar values for work.  In

---

[14] On October 17, 2017, ATO served PVGC its Notice of Termination expressly stating, "ATO is left with no other option but termination its subcontracts with PVGC on the Project[s] and formally make a claim for nonpayment against PVGC's Payment Bonds issued by Allied World Insurance Company for all amounts due and owing under the subcontracts."

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

fact, Ayala confirmed in his deposition that he could not produce his spreadsheets to PVGC as originally created because it was not in a form "proper[] for someone else to understand it . . . it was way too much data.  I just cannot just send a crazy spreadsheet. I have to put it into something clearly readable."

The absence of any measurable data and methodology to quantify adjustments is exacerbated by the fact Ayala repeatedly produced readjusted Completion Spreadsheets to PVGC.  Ayala even admits to PVGC that the Completion Spreadsheets contained vast discrepancies between his observations and another PVGC employee relating to ATO's completed work. [15]  Reliability, the "touchstone of admissibility under the business records exception to hearsay," is absent in every one of Ayala's Completion Spreadsheets and PVGC's retroactively created October 2017 payment applications. Accordingly, each is to be excluded as heresay.

**III. ATO, ZPacez and Ecolific's business records should be excluded from trial because they are confidential, proprietary documents and not relevant to ATO's breach of contract claim pursuant to Federal Rule of Evidence 401.**

PVGC and Allied continuously seek to obtain the confidential

---

[15] On November 13, 2018, Ayala states to PVGC, "I'll have the full report today around noon, I had some wrong judgments on completed percentages and we have not elevators on [C]ivic [T]owers, I already have it corrected, I'm just totalizing again right now.  Thank you." *See* Exhibit B.  On November 14, 2017, Ayala states to PVGC, "Sorry about the delays with this report but it was a big misunderstanding between David percentage perception and mine on C.O.'s and basically I had to re-do[] the whole thing." *See id.* On December 4, 2017, Ayala again adjusted and resubmitted his Completion Spreadsheets to PVGC. *See* Exhibit C.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

and proprietary business records belonging to ATO, ZPacez and Ecolific. Defendants' wide-sweeping and intrusive requests relentlessly seek information through PVGC's First Request for Production; PVGC's Subpoena Duces Tecum to Nonparty, ZPacez; and Allied's Motion to Compel Responses to First Request for Production of Documents. Defendants' requests include but are not limited to, all corporate records maintained by ATO pursuant to Section 607.1601, Florida Statutes;[16] ATO's banking records'; ATO's accounting records; all agreements between ATO and ZPacez; ATO's records of compensation; and ATO's employee W-2's. PVGC's Subpoena Duces Tecum to ZPacez contained practically identical requests, despite ZPacez being a nonparty to the case. PVGC's Amended Subpoena to former ATO director, Robert Mick also sought his ownership interest documents in ATO, ZPacez and Ecolific.

Moreover, the invasive requests seeking confidential and proprietary business records of ATO, ZPacez and Ecolific are irrelevant to the issue of the claim: whether ATO completed its scope of work under the two lump sum subcontracts with PVGC. PVGC's contractual obligation to tender payment for ATO's completed work are not contingent on the costs ATO bore to complete its scope of work because the Subcontracts are purely lump sum

---

[16] Section 607.1601, Florida Statutes, requires a corporation to maintain, among other things, accurate accounting records, record of its shareholders and their addresses, its articles, bylaws, resolutions, minutes of shareholder meetings, names and business street addresses of its directors and officers. Each of these requests are confidential, business information.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

agreements and not Cost-Plus agreements.

On August 10, 2018, the Court held a hearing on ZPacez's Motion to Quash and Entry of Protective Order against PVGC's Subpoena Duces Tecum relating to the admissibility of ZPacez's confidential business records.  The Court granted ZPacez's Motion to Quash and Entry of Protective order in part, excepting ZPacez's labor burden rates and payroll records for the Projects but deferred on the possibility of finding additional documents discoverable upon further review.  The Court did not make a finding as to the admissibility of any documents.  ATO does not object to the findings of the hearing but objects to the admissibility of any confidential and proprietary business records the Court deems discoverable as provided in the forthcoming order.[17]

Accordingly, ATO realleges and reincorporates its arguments set forth in ZPacez's Motion to Quash and Entry of Protective Order, see ECF 40, ZPacez's Reply to PVGC's Response to ZPacez's Motion to Quash; see ECF 47, and ATO's Response in Opposition to Allied's Motion to Compel Responses to First Request for Production of Documents, ECF 51, to exclude ATO, ZPacez and Ecolific's confidential and proprietary business records as evidence at trial.

---

[17] To date, the Court has not issued an order specifying which ZPacez business records are deemed discoverable.  As a result, ATO files this Motion in Limine to objects to the admissibility of all ZPacez proprietary business records deemed discoverable in the Court's forthcoming order.

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movants conferred with PVGC and Allied via e-mail and in a good faith effort to resolve the issues and that PVGC and Allied object to the relief sought herein.

Respectfully submitted,
TAYLOR ESPINO VEGA & TOURON P.A.
*Attorneys for Defendant, A.T.O. Golden Construction Corp.*
201 Alhambra Circle, Suite 801
Coral Gables, Florida 33134
Telephone: (305) 443-2043
Facsimile:   (305) 443-2048


By: /s/ FELIX RENE OJEDA
    TIMOTHY S. TAYLOR
    Florida Bar No.: 545015
    ttaylor@tevtlaw.com
    FELIX OJEDA
    Florida Bar No.: 127599
    fojeda@tevtlaw.com
    vperez@tevtlaw.com

CASE NO.: 1:17-cv-24223-WILLIAMS-TORRES

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on this **13th** day of August, 2018, on all counsel or parties of record on the Service list below:

JONATHAN P. COHEN, P.A.
*Attorneys for Allied World Insurance Company*
500 E. Broward Blvd, Suite 1710
Fort Lauderdale FL 33394
Phone: 954-462-8850
Fax: 954-848-2987
Jonathan P. Cohen, Esq.
Florida Bar No.11526
jcohen@jcohenpa.com
Kelsey K. Black, Esq.
Florida Bar No. 0994235
kblack@jcohenpa.com

CLARK PARTINGTON
*Attorney for Proposed Intervenor-Defendant, Pete Vicari General Contractor, LLC*
106 East College Avenue, Suite 600
Tallahassee, Florida 32301
Office (850) 320.6838
Facsimile (850) 597.7591
Keith L. Bell, Jr.
Fla. Bar No.: 573809
Kbell@Clarkpartington.com
Btraina@Clarkpartington.com

Respectfully submitted,

TAYLOR ESPINO VEGA & TOURON P.A.
*Attorneys for Plaintiff, A.T.O. Golden Construction Corp.*
201 Alhambra Circle, Suite 801
Coral Gables, Florida 33134
Telephone: (305) 443-2043
Facsimile: 305) 443-2048

By: /s/ FELIX RENE OJEDA
TIMOTHY S. TAYLOR
Florida Bar No.: 545015
ttaylor@tevtlaw.com
vperez@tevtlaw.com
TIMOTHY D. CORWIN
Florida Bar No. 68532
tcorwin@tevtlaw.com
FELIX RENE OJEDA
Florida Bar No.: 127599
fojeda@tevtlaw.com

Page 24 of 24
**TAYLOR ESPINO VEGA & TOURON, P.A.**