UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24223-Civ-WILLIAMS/TORRES

A.T.O. GOLDEN CONSTRUCTION
CORP., a Florida corporation,

    Plaintiff/Counterclaim Defendant,

v.

ALLIED WORLD INSURANCE COMPANY,
A foreign insurance company,

    Defendant.

v.

PETE VICARI GENERAL CONTRACTOR, LLC,
a foreign profit company,

    Defendant/Counter-Claimant
_____/a

## ORDER ON PLAINTIFF'S MOTION IN LIMINE

This matter is before the Court on A.T.O. Golden Construction Corp.'s ("Plaintiff") motion in limine to exclude the opinion testimony of Jorge Ayala ("Mr. Ayala"). [D.E. 68]. Allied World Insurance Company ("Allied World") and Pete Vicari General Contractor, LLC ("PVGC") (collectively, Defendants") responded on August 27, 2018 [D.E. 82] to which Plaintiff replied on September 4, 2018. [D.E. 91]. Therefore, Plaintiff's motion is now ripe for disposition. Having reviewed the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion in limine is **GRANTED in part** and **DENIED in part**.

1

## I. BACKGROUND

Plaintiff filed this action on November 21, 2017 for a breach of contract. [D.E. 1]. This case relates to construction work that Plaintiff performed at residential apartment buildings – known as the CT Project and the CTS Project (collectively, the "Projects") – under two subcontracts with PVGC. On March 1, 2017, PVGC entered into the contracts with Plaintiff for demolition and carpentry services. Pursuant to the contracts, PVGC was required to pay Plaintiff progress payments so long as Plaintiff's monthly payment applications provided detailed statements and percentages of completion that Plaintiff performed the prior month.

From March 2017 through July 2017, PVGC approved and paid Plaintiff for work submitted in payment applications 1 through 5. However, Plaintiff alleges that PVGC failed to provide any payment for work completed under payment applications 6 through 8. In August 2017, PVGC hired Mr. Ayala as a replacement manager for the Projects.[1] Mr. Ayala toured the Projects to determine how much work had been performed and to update the completion percentages of the Projects based on what he observed. When Mr. Ayala realized that Plaintiff had misreported the amount of work completed, he assisted PVGC in issuing a credit that corrected the completion percentages and reduced the money due from PVGC. Plaintiff alleges, on the other hand, that multiple entities, including PVGC, previously approved the applications

---

[1] PVGC hired Mr. Ayala when it became suspicious that the payment application approval process had been tainted with Mr. Mick's self-interests.

and completion percentages and therefore PVGC should not have created corrective pay applications.[2]

When Defendants failed to pay Plaintiff for applications 6 and 7, Plaintiff served PVGC on October 12, 2017 with a notice of default. On October 17, 2017, Plaintiff filed its notice of termination and expressed an intent to pursue an action against Allied World (PVGC's surety) for breach of the payment bond. Approximately three months later, on January 19, 2018, PVGC relied on Mr. Ayala's spreadsheets to create ATO payment applications of the October 2017 billing cycle. These spreadsheets assisted PVGC in justifying a credit to for work that Mr. Ayala determined was incomplete and overbilled. PVGC subsequently reduced the amounts owed under the subcontracts and, as a result, Plaintiff filed this lawsuit against Defendants on November 11, 2017 for the amounts owed under the subcontracts.

## II. *APPLICABLE PRINCIPLES AND LAW*

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Under the Federal Rules, evidence is considered relevant if it has the tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401(a)-(b). The Rules

---

[2] Defendants believe that these approvals have a fatal flaw because PVGC's former project manager was Mr. Mick who allegedly stood to benefit financially from Plaintiff's contract with PVGC.

3

permit the exclusion of relevant evidence when the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. Fed. R. Evid. 403 (emphasis added). Courts are cautioned to use Rule 403 sparingly, *see, e.g., United States v. King*, 713 F.2d 627, 631 (1983), in part because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a criminal defendant. *See id.* (citing to other sources).

### *III. ANALYSIS*

Plaintiff's motion in limine seeks to exclude the opinion testimony and spreadsheets of Mr. Ayala – who Plaintiff deposed on July 11, 2018 – because PVGC failed to disclose him as an expert witness. Plaintiff claims that the testimony and spreadsheets are inadmissible under Federal Rule of Evidence 701(c) because they rely on Mr. Ayala's technical and specialized construction skills to render conclusions. Plaintiff also contends that the spreadsheets are inadmissible hearsay because they do not fall under any applicable exception. And finally, Plaintiff argues that any payroll and labor records should be excluded because they are confidential and prejudicial. In other words, Plaintiff believes that these documents are irrelevant and – even if the Court found otherwise – Plaintiff concludes that their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or undue delay.

Defendants assert, on the other hand, that Mr. Ayala is only testifying to facts that he observed while working on the Projects and that his testimony does not

4

amount to an improper expert opinion. For example, Defendants claim that, when there are 100 rooms to inspect and 15 of those rooms have been completed, a completion of 15% is not something that requires an expert witness. Defendants accuse Plaintiff of misleading the Court because the payment applications identify an agreed value for the task observed. Defendants therefore conclude that the values on Mr. Ayala's spreadsheet were computed with a simple calculation of multiplying a value by the percentage of completion. Defendants also argue that Mr. Ayala's spreadsheets fit an exception to the hearsay rule and that the payroll/labor records are relevant on whether Plaintiff overbilled for its construction services. We will discuss the parties' arguments in turn.

> A. *Whether Mr. Ayala's Testimony and Spreadsheets Should be Excluded as a Violation of Federal Rule of Evidence 701*

The first issue is whether Mr. Ayala's testimony and spreadsheets should be excluded under Federal Rule of Evidence 701. Plaintiff argues that Mr. Ayala, as a senior project manager, was tasked to review Plaintiff's construction work. To complete this task, Plaintiff claims that Mr. Ayala drafted spreadsheets by observing the projects and adjusting Plaintiff's estimated percentages based on his subjective belief without any measurable data or methodology. Plaintiff alleges that Mr. Ayala relied on his specialized construction knowledge to conclude that Plaintiff overbilled and failed to complete the work required.

Plaintiff takes issue with how Mr. Ayala compiled his spreadsheets and the use of a payment application form. This format allegedly requires a specialized understanding of how construction work is quantified into percentages of completion.

5

For example, Plaintiff claims that Mr. Ayala's spreadsheets contain many categories to evaluate a subcontractor's work – including a breakdown of the hundreds of line items for the subcontractor, the percentage of completion, the percentages paid to subcontractors, the schedule of values, the total value of work completed, and the amount paid to the subcontractor. Plaintiff suggests that Mr. Ayala's spreadsheets and testimony go beyond the realm of a lay witness because the latter relies on specialized construction knowledge despite having personally observed Plaintiff's work. *See, e.g.*, *City of Mountain Park, Georgia v. Lakeside at Ansley, LLC*, 2009 WL 10665812, at *3 (N.D. Ga. Oct. 5, 2009) ("The witnesses are not mere lay persons and their opinions are not lay opinions. Their affidavits are based almost entirely of opinions based upon on their 'specialized knowledge' of construction, soil erosion, and prevention techniques. Therefore, these opinions cannot be offered under Rule 701.").

Accordingly, the crux of Plaintiff's argument is that verifying Plaintiff's percentage of completion requires a specialized understanding of extrinsic factors unknown to a layperson's day to day observations – including the costs of labor, the complexity of demolition, installation services, and external factors – and that Mr. Ayala cannot testify in this case without the designation of an expert witness. *See Dunn v. Allstate Ins. Co.*, 2008 WL 11407404, at *6 (N.D. Ga. Jan. 22, 2008) ("[E]stimating the cost to repair a unique building structure requires specialized knowledge of the cost of construction materials, the cost of labor, the complexity of repair, external factors, and other factors affecting the price of construction.").

6

Defendants' response is that Mr. Ayala's testimony falls squarely within the confines of Federal Rule of Evidence 701 because he merely reviewed the Projects and determined that not all the demolition work was completed. Defendants suggest that Mr. Ayala only adjusted Plaintiff's competition percentages based on what he observed and that he is simply testifying within the scope of his duties as a project manager. For example, Defendants rely on Mr. Alaya's deposition – with respect to the construction of kitchen cabinets – to demonstrate that his calculations do not require any specialized knowledge:

> Q. So it's a simple matter of, let's say there 71 are 10 kitchens and 10 baths and you believe that they did six kitchens and six baths and the percentage should be different?
>
> A. No, sir. The way in construction, how you handle kitchen cabinets in that matter, you go through doors. You count the doors, and you see how many cabinets they installed per doors, and you divide 100 percent is the total kitchen cabinets completed, and you divide the number of cabinets that they have to install to get the 100 percent, and then if they did only half, you put only 50 percent. If they did half, but they didn't put -- they didn't tie the screws in some of those, you take 5 percent less.

[D.E. 82-2 at 71]. Because Mr. Ayala is merely testifying within the scope of his duties as a project manager based on simple observations as he walked through the Projects, Defendants conclude that his testimony fits within the realm of a lay witness.

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2). A witness is qualified as an expert by "knowledge, skill, experience, training, or education" and may provide opinion testimony if four enumerated criteria are

7

satisfied. Fed. R. Evid. 702. Specifically, Rule 702 provides that an expert witness may testify to his or her opinion if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) the testimony "is based on sufficient facts or data" and is the "product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

On the other hand, the hallmark of lay witness testimony is when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The requirement that a laywitness's opinion be rationally related to his perception is satisfied where his or her perception is based on a review of relevant documents, both in and not in evidence. *See Jayyousi,* 657 F.3d at 1102–03. Indeed, the witness's opinion must be based on a rational perception of the reviewed information, and the witness must not "merely deliver[ ] a jury argument from the witness stand" based on inferences drawn from facts already in evidence. *Id.* at 1103. The last requirement in Rule 702 is intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and "also ensures that a party will not evade the expert witness disclosure requirements set forth in [Federal Rule of Civil Procedure] 26 . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note to 2000 amend.

8

But as the Eleventh Circuit Court of Appeals has concluded, "Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." *Hill*, 643 F.3d at 841. Indeed, as the Advisory Committee Notes explain, "[t]he amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed. R. Evid. 701 Advisory Comm. Notes (emphasis in original). This means that "credentials alone do not make the expert; the testimony based upon the credentials make the expert." *Smith v. Dunn*, 2017 WL 1365222, at *2 (S.D. Ala. Apr. 5, 2017). And, as the Eleventh Circuit found in *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, opinion testimony regarding the manner or method upon which a company takes action, which is based on particularized knowledge gained by a witness's employment, is properly treated as lay testimony. 320 F.3d 1213, 1223 (11th Cir. 2003).[3]

The determination of whether testimony is properly admitted as a lay opinion is based upon the nature of the testimony, not whether the witness could have been qualified as an expert. *See United States v. LeCroy,* 441 F.3d 914, 927 (11th Cir. 2006). Here, the parties disagree on whether Mr. Ayala's spreadsheets and his personal observations constitute expert or lay testimony. Defendants suggest that the computations of Mr. Ayala's spreadsheets were simplistic and that the

---

[3] The Eleventh Circuit concluded that the district court had not abused its discretion in permitting officers and employees to testify as lay witnesses about the reasonableness of their corporation's pricing in light of industry standards because their testimony was "based upon their particularized knowledge garnered from years of experience within the field." *Id.* at 1223.

9

percentages were determined merely based on how much work Plaintiff completed (i.e. 50% accorded for half of cabinets installed).

But, the computations in the spreadsheets are not as basic as Defendants suggest and Mr. Ayala's testimony supports that view. Mr. Ayala explained, for example, how he determined percentages with respect to the installation of kitchen cabinets. Mr. Ayala states that if half of the kitchen cabinets where installed in a certain location then that would result in a 50% completion rate. However, Mr. Ayala then testifies that "[i]f they did half, but they didn't . . . tie the screws in some of those, you take 5 percent less." [D.E. 82-2 at 81]. Defendants offer no explanation – and it is unclear to the Court – on how Mr. Ayala's computations constitute lay witness testimony when Mr. Ayala is determining percentages based on the number of screws installed in a cabinet. Mr. Ayala's testimony instead shows that these percentages require a specialized understanding of labor, demolition, and installation costs.

Another indication that Mr. Ayala's spreadsheets constitute expert testimony is the complexity of the data collected and the use of computers to generate his spreadsheets. Mr. Ayala claims that he would go to every floor with a notepad, collect data, and transmit that information to a computer which would then synthesize it into a spreadsheet. This process purportedly took the computer days, if not a week, to determine the final percentages:

> Q. So when you reference the updated completion spreadsheet from September 27th in the previous exhibit in front of you, that wasn't a spreadsheet, that was just a bunch of compiled data?
>
> A. Okay. I go with a notepad to every floor and I make my notes and I take my notes on completion. While I transmit all that data to the computer and put it in a spreadsheet, it could take a week or days, so some more progress is happening those days. So as soon as I put this information, I've got to make sure what was done the week while I was working on that paperwork to include it over there, that's what I mean updated, but pretty much the updating is minimum.

[D.E. 121 at 45-46]. This suggests that Mr. Ayala's computations are beyond the realm of lay witness testimony because the collection of the data requires specialized construction knowledge which, in turn, requires a computer to determine the percentages of the work completed.[4] This process was necessary so that individuals, other than himself, could read and understand the data collected:

> Q. Yeah, I understand that the handwritten notes may not make sense to me or anybody else because we have specific handwriting, but the spreadsheets that you created, did you take the data that you hand wrote down and put it in a narrative with using a computer so that people could actually read it and understand it?
>
> A. Yes, sir.

*Id.* at 75. Given Mr. Ayala's testimony and the computer method he used to compile his spreadsheets, we find that the data he collected does not "result[] from a process of reasoning familiar in every day life," but instead "from a process of reasoning that can be mastered only by specialists in the field," of construction. *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 3944061, at *3 (S.D. Fla. July 11, 2016) (citations

---

[4] Based on Mr. Ayala's testimony, it is not entirely clear whether the computer was manipulating the data to determine a percentage or simply adding/subtracting the information. However, given the time frame it took for the computer to produce Mr. Ayala's spreadsheets, it appears that the former is far more likely than the latter.

11

omitted). Defendants should have designated Mr. Ayala as an expert in this case because – although a lay person may opine on matters based upon his perception – he may not testify as to matters that require specialized knowledge.

Because Mr. Ayala rendered an expert opinion based on his specialized knowledge of design and construction and Defendants failed to disclose him as an expert witness, Plaintiff's motion in limine to exclude Mr. Aya's spreadsheets and testimony related to the *specific* valuations of the construction work that Plaintiff completed is **GRANTED**.[5] *See Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.,* 2013 WL 5566066, at *3 (M.D. Fla. Oct. 8, 2013) ("Mr. Klimas is necessarily rendering an opinion based upon his own specialized knowledge of design and construction. Because Mr. Klimas was not disclosed as an expert witness, this sentence in paragraph 9 of his affidavit is STRICKEN.") (citing *Armenian Assembly of Am., Inc. v. Cafesjian,* 746 F.Supp.2d 55, 65 (D.D.C. 2010) (finding that under Rule 701, "a lay witness who is not qualified as an expert may not give opinions that are based on his or her specialized knowledge, even if those opinions were also based on his or her personal knowledge"); *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) ("Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." (internal citation omitted)), *overruled on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454

---

[5] Because we conclude that Mr. Ayala's spreadsheets should be excluded for the reasons set forth above, we need not reach Plaintiff's argument that the spreadsheets should be excluded on the basis that they constitute inadmissible hearsay.

(2006); *Reese v. Herbert,* 527 F.3d 1253, 1265 (11th Cir. 2008) ("[T]he expert disclosure rule is intended to provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'")).

We note, however, that this does not mean that the entirety of Mr. Ayala's testimony should be excluded because "[i]t is possible for the same witness to provide both lay and expert testimony in a single case." *United States v. Jones*, 218 F. App'x 916, 918 (11th Cir. Feb. 27, 2007). While Mr. Ayala's spreadsheets on the specific valuation of the work Plaintiff completed constitutes expert testimony, his general observations are admissible as lay witness testimony because there is no specialized knowledge required to tour the Projects and observe the status of the construction work completed. In other words, the observation of whether Plaintiff completed the construction work that they were required to do may be the product of reasoning "familiar to the average person in everyday life." *United States v. Garcia,* 413 F.3d 201, 215 (2d Cir. 2005). Accordingly, Plaintiff's motion to exclude the remainder of Mr. Ayala's testimony – that is unrelated to the specific valuations of the work Plaintiff completed on the Projects – is **DENIED**.

### B. *Whether Confidential Business Records Should be Excluded*

The next issue is whether records relating to Plaintiff's payroll and labor costs should be excluded at trial because they are confidential and irrelevant to Plaintiff's breach of contract claim. Plaintiff contends that the documents requested are irrelevant because the primary issue in this case is whether Plaintiff completed its

13

scope of work under the contracts with PVGC. Plaintiff also argues that admitting the payroll and labor records is prejudicial because it will confuse the issues and mislead the jury. Plaintiff claims that a jury may not fully understand (1) Plaintiff's incurred labor costs, and (2) that costs and profits are irrelevant to Plaintiff's entitlement to payment because the contract at issue was a lump-sum agreement.[6] Because the documents Defendant seek to introduce are proprietary in nature and irrelevant to the facts of this case, Plaintiff concludes that these items are inadmissible as a matter of law.

Defendants' response is that Plaintiff's motion is speculative because Plaintiff has not produced the documents requested and that Defendants "cannot speak to the direct admissibility of any document aside from the payroll record previously produced." [D.E. 82 at 13]. Defendants also maintain that Plaintiff makes no effort to highlight any category of documents in its motion with any specificity and that Plaintiff's argument – that all items sought – are somehow confidential is entirely unsupported. Defendants therefore suggest that neither party has any basis at this time to dispute the admissibility of Plaintiff's payroll and labor records because none of the items that Defendants requested have been produced.

Plaintiff's motion is unpersuasive for at least two significant reasons. First, Plaintiff fails to provide any specificity on why all labor and payroll records should be excluded. Plaintiff merely presents a blanket argument that payroll and labor

---

[6] The parties disagree on whether the underlying contract provides a lump sum agreement or a cost-plus agreement. For our purposes, this is a question for another day because Plaintiff, as the movant, has not provided adequate support in its motion that the payroll and labor records should be excluded.

records are irrelevant because the only issue in this case is a breach of contract claim. But, Plaintiff overlooks the primary defense in this action – which is that Plaintiff billed for work that was not performed under the contract and that Defendant had a justified reason for denying payment. Plaintiff's motion also never identifies a single payroll or labor record, but merely speculates in the abstract that the documents are irrelevant. Plaintiff's argument is feeble because it lacks the factual and legal support to reach that conclusion. To the contrary, it appears that these documents are relevant because the dispute between the parties is whether Plaintiff overbilled for construction services and whether Defendant breached the underlying subcontract by withholding payment. While these documents may not be dispositive one way or the other, the arguments presented suggest that billing and labor costs are, at least, somewhat relevant on the question of whether Plaintiff falsified completion percentages on payment applications.

Second, Plaintiff's motion assumes that business and financial records are *per se* confidential and should be excluded at trial, but Plaintiff fails to rely on any authority supporting this argument. Plaintiff's confidentiality arguments suffer from the same ailment as the one above because – aside from Plaintiff's conclusory remarks – Plaintiff has failed to establish that the items sought are confidential. *See, e.g.*, *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) ("In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful.").

This is not to say that some of the payroll records and labor records may be irrelevant, but Plaintiff has failed to meet its burden to warrant a whole exclusion of these documents. *See United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) ("The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground.") (citing *In re Seroquel Prods. Liab. Litig.,* 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009)). This also does not mean that the denial of Plaintiff's motion will lead to the admissibility of these records at trial. *See Hawthorne Partners v. AT & T Tech.,* 831 F. Supp. 1398, 1401 (N.D. Ill. 1993) ("Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial."). The only takeaway is that Plaintiff has not met the burden of demonstrating that the records at issue are evidence are clearly inadmissible. *See, e.g., Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1363 (7th Cir. 1996) (explaining that an argument that a party could not prove its claim with reasonable certainty based on the evidence is not a proper basis for a motion to exclude evidence prior to trial); *see also Arthrex, Inc. v. Parcus Med., LLC*, 2014 WL 2700802, at *1–2 (M.D. Fla. June 13, 2014) ("Having found no evidence that is clearly inadmissible at trial, the motion is due to be denied."). In other words, the "denial of [Plaintiff's] motion means the court cannot determine whether the evidence in question should be excluded outside the trial context. *In re Seroquel Prods. Liab. Litig.,* 2009 WL 260989, at *1 (citing *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989)).

16

Therefore, Plaintiff's motion in limine to exclude all payroll and labor records is **DENIED** with leave to renew at trial as to specific exhibits being moved for admission, because "[u]nless evidence meets [the standard of being clearly inadmissible] evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prod. Liab. Litig.*, 2009 WL 260989, at *1 ("It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there.") (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion in limine [D.E. 84] is **GRANTED in part** and **DENIED in part**:

A. Plaintiff's motion to exclude Mr. Ayala's spreadsheets is **GRANTED**.

B. Plaintiff's motion to exclude the remainder of Mr. Ayala's testimony is **DENIED**.

C. Plaintiff's motion to exclude all payroll and labor records is **DENIED** with leave to renew these arguments at trial.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of November, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge