# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24223-Civ-WILLIAMS/TORRES

A.T.O. GOLDEN CONSTRUCTION
CORP., a Florida corporation,

        Plaintiff/Counterclaim Defendant,

v.

ALLIED WORLD INSURANCE COMPANY,
A foreign insurance company,

        Defendant.

v.

PETE VICARI GENERAL CONTRACTOR, LLC,
a foreign profit company,

        Defendant/Counter-Claimant

_____/

## ORDER ON DEFENDANTS' MOTION IN LIMINE

This matter is before the Court on Allied World Insurance Company's ("Allied World") and Pete Vicari General Contractor, LLC's ("PVGC") (collectively, Defendants") joint motion in limine against A.T.O. Golden Construction Corp. ("Plaintiff"). [D.E. 106]. Plaintiff responded to Defendants' motion on October 9, 2018 [D.E. 115] to which Defendants replied on October 16, 2018. [D.E. 117]. Therefore, Defendants' motion is now ripe for disposition. Having reviewed the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion in limine is **GRANTED in part** and **DENIED in part**.

# I. BACKGROUND

Plaintiff filed this action on November 21, 2017 for a breach of contract. [D.E. 1]. This case relates to construction work that Plaintiff performed at residential apartment buildings – known as the CT Project and the CTS Project (collectively, the "Projects") – under two subcontracts with PVGC. On March 1, 2017, PVGC entered into the contracts with Plaintiff for demolition and carpentry services. Pursuant to the contracts, PVGC was required to pay Plaintiff progress payments so long as Plaintiff's monthly payment applications provided detailed statements and percentages of completion that Plaintiff performed the prior month.

From March 2017 through July 2017, PVGC approved and paid Plaintiff for work submitted in payment applications 1 through 5. However, Plaintiff alleges that PVGC failed to provide any payment for work completed under payment applications 6 through 8. In August 2017, PVGC hired Mr. Ayala as a replacement manager for the Projects.[1] Mr. Ayala toured the Projects to determine how much work had been performed and to update the completion percentages of the Projects based on what he observed. When Mr. Ayala realized that Plaintiff had misreported the amount of work completed, he assisted PVGC in issuing a credit that corrected the completion percentages and reduced the money due from PVGC. Plaintiff alleges, on the other hand, that multiple entities, including PVGC, previously approved the applications

---

[1] PVGC hired Mr. Ayala when it became suspicious that the payment application approval process had been tainted with Mr. Mick's self-interests.

and completion percentages and therefore PVGC should not have created corrective pay applications.[2]

When Defendants failed to pay Plaintiff for applications 6 and 7, Plaintiff served PVGC on October 12, 2017 with a notice of default. On October 17, 2017, Plaintiff filed its notice of termination and expressed an intent to pursue an action against Allied World (PVGC's surety) for breach of the payment bond. Approximately three months later, on January 19, 2018, PVGC relied on Mr. Ayala's spreadsheets to create ATO payment applications of the October 2017 billing cycle. These spreadsheets assisted PVGC in justifying a credit to for work that Mr. Ayala determined was incomplete and overbilled. PVGC subsequently reduced the amounts owed under the subcontracts and, as a result, Plaintiff filed this lawsuit against Defendants on November 11, 2017 for the amounts owed under the subcontracts.

## II.   APPLICABLE PRINCIPLES AND LAW

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Under the Federal Rules, evidence is considered relevant if it has the tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401(a)-(b). The Rules

---

[2]    Defendants believe that these approvals have a fatal flaw because PVGC's former project manager was Mr. Mick who allegedly stood to benefit financially from Plaintiff's contract with PVGC.

permit the exclusion of relevant evidence when the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. Fed. R. Evid. 403 (emphasis added). Courts are cautioned to use Rule 403 sparingly, *see, e.g., United States v. King*, 713 F.2d 627, 631 (1983), in part because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a criminal defendant. *See id.* (citing to other sources).

## III. ANALYSIS

Defendants' motion in limine seeks to exclude four categories of evidence at trial. First, Defendants argue that any evidence related to lost profits should be excluded because – despite Plaintiff's request for lost profits in its complaint – Plaintiff has stonewalled discovery on this issue. Second, Defendants request that Plaintiff be subjected to an adverse inference instruction because Plaintiff failed to preserve relevant electronic evidence. Alternatively, Defendants request that Plaintiff's lost profit claim be deemed waived. Third, Defendants assert that if Mr. Ayala is stricken as an expert witness, as Plaintiff requested in its motion in limine, then the Court should exclude any of Plaintiff's witnesses to the extent they seek to testify on the process of creating Plaintiff's payment applications. And finally, Defendants request that any other lawsuits filed against PVGC should be excluded because other cases are not probative of the allegations in this lawsuit because the underlying facts are substantially different.

Plaintiff asserts, on the other hand, that Defendants' motion is defective for five reasons. As a preliminary matter, Plaintiff claims that Defendants' motion should be outright denied because it was filed after the deadline provided in the Court's Scheduling Order which requires that motions in limine be filed by August 13, 2018.[3] Second, Plaintiff argues that Defendants' request to exclude lost profits should be denied because ZPacez already produced Plaintiff's labor costs pursuant to the Court's Discovery Order. Third, Plaintiff contends that Defendants fail to meet their burden to show that they are entitled to a remedy for spoliation of evidence. Fourth, Plaintiff takes issue with Defendants' request to exclude Plaintiff's payment applications because they qualify as business records under the Federal Rules of Evidence. Finally, Plaintiff opposes Defendants' request to exclude evidence of other lawsuits against PVGC because these cases are probative of PVGC's repeated pattern of failing and/or refusing to pay subcontractors. We will discuss the parties' arguments in turn.

---

[3] Plaintiff argues that Defendants' motion in limine (filed on September 25, 2018) is untimely because the Court's Scheduling Order case set a deadline of August 13, 2018 to file these motions. Defendants claim, however, that there is an ambiguity in the Scheduling Order because while August 13, 2018 was the deadline to file motions in limine, another provision indicates that all motions in limine must be filed at least six weeks before calendar call. And given that the Court originally set a deadline for calendar call on November 6, 2018, Defendants conclude that the filing of their motion in limine comports with the plain language of the Scheduling Order. We need not delve into the merits of this issue because even if Defendants misinterpreted the Court's Scheduling Order, we find that the interests of justice weigh in favor of considering the merits of Defendants' motion – particularly since the Court delayed the date for calendar call even further until January 22, 2019. This means that, even if Defendants violated the Scheduling Order, Defendants have set forth good cause and Plaintiff has no viable argument that it suffered any prejudice.

### A. *Whether Evidence Related to Plaintiff's Lost Profits Claim Should be Excluded*

Defendants' initial argument is that, "[w]hile Plaintiff has framed its request for lost profits by the the pleadings, [Plaintiff's] conduct in discovery should be deemed to have waived its request for lost profits." [D.E. 106]. Defendants contend that Plaintiff's claim for lost profits should be deemed waived because Defendants cannot properly evaluate it without knowledge of Plaintiff's costs. Specifically, Defendants suggest that the doctrine of judicial estoppel should apply to prevent Plaintiff "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. 489, 504 (2006) (citations and quotation marks omitted).

Defendants' argument relates to a discovery hearing that the parties attended on August 10, 2018 where Plaintiff argued that PVGC was not permitted to inquire about Plaintiff's costs because this case concerns a lump sum contract. Defendants assert that the undersigned limited the amount of discovery that Plaintiff had to produce because all items, except for payroll and labor records, fell outside the scope of discoverable documents. Because Plaintiff failed to produce any documents related to Plaintiff's costs, Defendants conclude that they have been precluded from examining Plaintiff's claim for lost profits and that it cannot proceed to trial.

Defendants' motion is misguided because it seeks to dispose of Plaintiff's lost profits claim on a motion in limine. If Plaintiff's lost profits claim is as unsupported as Defendants suggest and Plaintiff failed to produce any evidence in support thereof, this is an issue more suitable on a motion for summary judgment – not a motion in

limine. Indeed, the former relates to the disposition of a party's claims whereas the latter targets the exclusion of evidence. And while "the Federal Rules of Federal Rules of Civil Procedure contain multiple rules allowing parties to dismiss claims; there is no need to disguise a motion for summary judgment in the clothing of a motion in limine. Instead, the proper courses are a timely filed motion for summary judgment or a motion for judgment as a matter of law." *Gold Cross Ems, Inc. v. Children's Hosp. of Alabama*, 309 F.R.D. 699, 702 (S.D. Ga. 2015). Because Defendants' motion "is an attempt . . . [to] use[]a motion in limine to dispose of a claim," Defendants' motion in limine to exclude Plaintiff's lost profits claim is **DENIED**.

### B.     *Whether Plaintiff should be Subjected to an Adverse Inference*

The next issue is whether Plaintiff should be subjected to an adverse inference instruction and the waiver of its lost profits claim for failing to preserve relevant electronic evidence. Defendants argue that Plaintiff's 30(b)(6) deponent testified that data on three laptops crashed, including the loss of a cell phone. Defendants also allege that Plaintiff disposed of these items to preclude Defendants from examining or conducting their own recovery efforts and that Plaintiff's actions arise to the spoliation of evidence. In sum, Defendants contend that there are two categories of electronically stored information that warrant examination and review for spoliation purposes.

First, Defendants suggest that Plaintiff spoliated evidence related to the costs of the Projects. Defendants claim that knowledge of the costs of the Projects is

necessary to rebut the claim for lost profits and that one of two things must be true – either Plaintiff withheld evidence based on relevancy or Plaintiff failed to provide relevant information that it should have possessed. Specifically, Defendants take issue with the documents that Plaintiff produced in this case because they show that – other than Plaintiff stonewalling discovery – the only other viable explanation for missing documents is that Plaintiff's electronic equipment containing the information failed.[4] Therefore, Defendants conclude that (1) if the evidence exists but Plaintiff withheld it then the lost profits claim should be estopped, or (2) if the evidence existed but has been lost because of the failure to preserve evidence then the lost profits claim should still be stricken for spoliation of evidence.

Second, Defendants suggest that Plaintiff spoliated evidence with respect to (1) an agreement that shows Mr. Mick diverting his interests to Ms. Logunova, and (2) a labor leasing agreement. Defendants maintain that, in relation to the assignment document, no party has found or provided in discovery an email in which this agreement was an attachment. The only documentary evidence of the agreement consists of a single file which is a non-searchable PDF of the signed agreement. PVGC claims that it issued a request for production of all relevant metadata to discover more information on this document, but that Plaintiff did not respond to this request. Defendants therefore conclude that Plaintiff may have spoliated this evidence given its refusal to respond to PVGC's discovery requests.

---

[4] Defendants claim that Plaintiff failed to produce records of payment, bank records, profit/loss reports, financial statements, or tax returns.

As for the leasing agreement, Defendants claim that no party has found or provided in discovery an email with this document. The first time that the document was provided to PVGC was allegedly via email where the metadata indicates that the PDF was created from a Microsoft Word document. Defendants claim that they raised this issue with Plaintiff, but that Plaintiff failed to provide the original document or a signed version. Accordingly, Defendants conclude that Plaintiff's decision to either withhold relevant evidence or the loss of important documents constitutes spoliation in bad faith.

"'Spoliation' is the intentional destruction, mutilation, alteration, or concealment of evidence.'" *Walter v. Carnival Corp.*, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing *St. Cyr v. Flying J Inc.,* 2007 WL 1716365 at *3 (M.D. Fla. June 12, 2007)). To establish spoliation, Defendants must show (1) that the missing evidence existed at one time, (2) that Plaintiff had a duty[5] to preserve the evidence, and (3) that the evidence was crucial to Defendants being able to prove its prima facie case. *See Floeter v. City of Orlando,* 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007). "However, a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on *bad faith*," such as where a party purposely loses or destroys relevant evidence.'" *Walter*, 2010 WL 2927962, at *2 (citing *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997) (emphasis added)). And "[m]ere negligence" in losing or destroying records is not enough for an

---

[5]     The duty to preserve evidence may arise prior to the commencement of litigation when a party contemplates litigation and it is reasonably foreseeable that the evidence is relevant to the litigation. *See St. Cyr v. Flying J Inc.*, 2007 WL 1716365, at *3 (M.D. Fla. June 12, 2007).

adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Comm'n,* 514 F.2d 734, 737 (5th Cir. 1975). In fact, even gross negligence is insufficient to make a finding of bad faith. *See, e.g., Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1298 (S.D. Fla. 2015) ("Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even grossly negligent discovery conduct does not justify that type of jury instruction."); *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *3 (M.D. Fla. Mar. 12, 2015) (finding that gross negligence will not support the imposition of spoliation sanctions).

"If direct evidence of bad faith is unavailable, bad faith may be founded on circumstantial evidence when the following criteria are met: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Walter*, 2010 WL 2927962, at *2 (quoting *Calixto v. Watson Bowman Acme Corp.,* 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009)). "The party seeking the sanctions must establish all four of these factors where there is no direct evidence of bad faith." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (citing *Calixto,* 2009 WL 3823390,

at *16 (stating that "in this Circuit, bad faith may be found on circumstantial evidence where all of the [aforementioned] hallmarks are present")).

Here, Defendants' motion for an adverse inference is unpersuasive for several reasons but most importantly because it relies on nothing more than speculation in concluding that Plaintiff failed to produce the documents that Defendants requested. *See, e.g.*, *Depofi v. DynCorp Int'l LLC*, 2009 WL 10671361, at *2 (N.D. Ga. May 18, 2009) ("DynCorp relies on nothing more than pure speculation to support its argument that Depofi and his counsel intentionally concealed the impending tort action from DynCorp so that it could not investigate the staircase."). Defendants, for example, hedge in their motion that Plaintiffs either stonewalled discovery or failed to maintain electronic data. Noticeably, however, Defendants are uncertain what Plaintiff may have done. The only assertion that Defendants are confident about is that they did not receive the documents that they requested.

But, a discovery dispute without some evidence or proof that relevant evidence has been destroyed does not provide the proper foundation to file a motion for spoliation of evidence. Courts in our Circuit have consistently applied this standard and required that a party seeking to prove spoliation first show that some relevant and crucial evidence has been destroyed or significantly altered before spoliation can be found and sanctions awarded. *See, e.g.*, *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946-47 (11th Cir. 2005) (spoliation found where vehicle that was critical to the case was destroyed before defendant could examine it); *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (inability of plaintiff to establish that a destroyed

videotape contained relevant footage of a fall at issue in the case supported denying motion for spoliation sanction); *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (spoliation found where defendants established that plaintiffs destroyed "the critical piece of evidence in this case" and defendants suffered substantial prejudice); *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp. 2d 1342 (N.D. Ga. 2011) (spoliation found where party established that relevant physical evidence critical to the claims in the case was destroyed after the spoliating party was on notice that litigation was reasonably foreseeable). This means that a party seeking spoliation sanctions may not rest "upon speculation that important documents concerning [a claim or defense] existed but were destroyed." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1309-10 (N.D. Ga. 2011) (citing cases and discussing the requirement that some proof of destruction of critical or crucial evidence be offered by party asserting spoliation); *see also Heath v. Wal-Mart Stores East, LP*, 697 F. Supp. 2d 1373, 1378-79 (N.D. Ga. 2010) (finding that speculation about what destroyed portions of video footage might have shown is insufficient to support a finding of spoliation).

If Plaintiff stonewalled discovery, as Defendants allege, then they should have sought relief pursuant to the Court's Discovery Calendar. Otherwise, given the arguments presented, Defendants have not set forth a viable argument that evidence was spoliated in this case. If the rule that Defendants suggest was the standard – which is that speculation is enough for a spoliation finding – then spoliation motions would be filed in every case that a discovery dispute arises. Therefore, Defendants'

motion for adverse inference is **DENIED** because speculation alone is not enough to conclude that Plaintiff spoliated evidence.

Putting aside that problem, Defendants have also failed to present any direct evidence of spoliation – meaning they are required to show that 1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case, (2) the spoliating party engaged in an affirmative act causing the evidence to be lost, (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence, and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Walter*, 2010 WL 2927962, at *2 (quoting *Calixto*, 2009 WL 3823390, at *16). Yet, Defendants cannot meet these elements because, by their own admission, they have not established one way or the other that Plaintiff engaged in an affirmative act to destroy evidence. And because there is no evidence that Plaintiff engaged in an affirmative act that caused any electronic evidence to be spoliated, Defendants' motion is **DENIED** on this basis as well.

C. *Whether Testimony of Plaintiff's Lay Witnesses Should be Excluded as a Violation of Federal Rule of Evidence 701*

The next issue is whether the testimony of Plaintiff's witnesses, to the extent that they seek to opine on the percentages of completion found in Plaintiff's payment applications, should be excluded under Federal Rule of Evidence 701. Defendants argue that they are entitled to the same relief as Plaintiff, to the extent the Court concludes that determining a percentage of completion requires expert testimony,

because Plaintiff's motion in limine was aimed at excluding the testimony of Defendants' lay witness Mr. Ayala.

As background, Plaintiff's motion sought to exclude Mr. Ayala's spreadsheets and testimony because they constituted improper expert testimony of a lay witness. Plaintiff argued that Mr. Ayala was tasked to review Plaintiff's construction work and drafted spreadsheets by observing the Projects and adjusting Plaintiff's estimated percentages based on his subjective belief without any measurable data or methodology. Plaintiff alleged that Mr. Ayala relied on his specialized construction knowledge to conclude that Plaintiff overbilled and failed to complete the work required.

Plaintiff took issue with how Mr. Ayala compiled his spreadsheets and the use of a payment application form because it required a specialized understanding of how construction work is quantified into percentages of completion. For example, Plaintiff claimed that Mr. Ayala's spreadsheets contained many categories to evaluate a subcontractor's work – including a breakdown of the hundreds of line items for the subcontractor, the percentage of completion, the percentages paid to subcontractors, the schedule of values, the total value of work completed, and the amount paid to the subcontractor. As such, Plaintiff concluded that Mr. Ayala's spreadsheets and testimony went beyond the realm of a lay witness because it relied on specialized construction knowledge despite having personal observations of Plaintiff's work. *See, e.g.*, *City of Mountain Park, Georgia v. Lakeside at Ansley, LLC*, 2009 WL 10665812, at *3 (N.D. Ga. Oct. 5, 2009) ("The witnesses are not mere lay persons and their

14

opinions are not lay opinions. Their affidavits are based almost entirely of opinions based upon on their 'specialized knowledge' of construction, soil erosion, and prevention techniques. Therefore, these opinions cannot be offered under Rule 701.").

We found that Mr. Ayala's spreadsheets were not as basic as Defendants suggested and that Mr. Ayala's testimony supported that view. We relied, in part, on Mr. Ayala's testimony on how he determined percentages with respect to the installation of kitchen cabinets. Mr. Ayala stated, for example, that if half of kitchen cabinets where installed in a certain testified then that would result in a 50% completion rate. However, Mr. Ayala then testified that "[i]f they did half, but they didn't . . . tie the screws in some of those, you take 5 percent less." [D.E. 82-2 at 81]. We found that Defendants offered no explanation on how Mr. Ayala's computations constituted lay witness testimony when Mr. Ayala was determining percentages based on the number of screws installed in a cabinet. Mr. Ayala's testimony instead showed that these percentages required a specialized understanding of labor, demolition, and installation costs.

We also determined that the specific valuations on Mr. Ayala's spreadsheets constituted expert testimony because he used computers to manipulate the data collected and to generate his percentages. Mr. Ayala claimed that he would go to every floor with a notepad, collect data, and transmit that information to a computer which would then synthesize it into a spreadsheet. This process purportedly took the computer days, if not a week, to determine the final percentages:

Q. So when you reference the updated completion spreadsheet from September 27th in the previous exhibit in front of you, that wasn't a spreadsheet, that was just a bunch of compiled data?

A. Okay. I go with a notepad to every floor and ·I make my notes and I take my notes on completion. While I transmit all that data to the computer and put it in a spreadsheet, it could take a week or days, so · some more progress is happening those days. So as soon as I put this information, I've got to make sure what was done the week while I was working on that ·paperwork to include it over there, that's what I mean updated, but pretty much the updating is minimum.

[D.E. 121 at 45-46]. As such, we concluded that Defendants should have designated Mr. Ayala as an expert in this case because – although a lay person may opine on matters based upon his perception – he may not testify as to matters that require specialized knowledge and were tasked for purposes of litigation. And because Mr. Ayala rendered an expert opinion based on his specialized knowledge of design and construction and Defendants failed to disclose him as an expert witness, we granted Plaintiff's motion in limine to exclude Mr. Ayala's spreadsheets and testimony to the extent that they related to the *specific* valuations of the construction work that Plaintiff completed.[6]

Here, Defendants argue that the process that Mr. Ayala used in compiling his spreadsheets is the same method that Plaintiff's witnesses used in creating its payment applications. Defendants maintain that a visual examination and review of the actual level of completion may have been required and that this falls outside the

---

[6]    We further noted that, although the specific valuations on Mr. Ayala's spreadsheets constituted expert witness testimony, any testimony related to his general observations of the construction work completed is admissible because  it is the product of reasoning "familiar to the average person in everyday life." *United States v. Garcia,* 413 F.3d 201, 215 (2d Cir. 2005).

realm of lay witness testimony in the same way that we excluded the testimony/spreadsheets of Mr. Ayala.[7] Because Plaintiff failed to disclose an expert in this case as required under Rule 26 and the method used to create Plaintiff's payment applications is the same as Mr. Ayala's, Defendants request that we exclude any testimony of Plaintiff's witnesses on this issue and provide a limiting instruction as to the probative value of Plaintiff's payment applications.

Defendants' motion is, however, unpersuasive because there is inadequate support in the record to reach their conclusion. While Defendants claim that the process used to create Mr. Ayala's spreadsheets is the same as Plaintiff's payment applications, Defendants failed to support their argument with an exhibit to Plaintiff's payment applications or, for example, deposition testimony that establishes that the processes are the same. Instead, Defendants request that we decide in the abstract that the payment applications were created the same way as Mr. Ayala's spreadsheets, but we cannot make that finding without a sufficient factual record. Defendants also neglected to include any legal authority to support their position. In fact, Defendants' motion is almost the exact opposite of Plaintiff's motion in limine where the latter explained in detail the ways in which Mr. Ayala's spreadsheets were created and then relied on deposition testimony to illustrate how his method constituted expert testimony. Because we do not have a sufficient legal or factual record to find that Plaintiff's payment applications constitute expert

---

[7] Defendants are uncertain on whether a visual inspection was required or not. [D.E. 106] ("[T]he payment applications do not contain evidence of actual completion but an ATO official's projection of completion, which may or may not have been based on a visual inspection.").

testimony and the movant has the burden of demonstrating that the evidence should be excluded, Defendants' motion is **DENIED** with leave to renew at trial. *See S. Aggregate Distributors, Inc. v. Downen Aggregate Grp., LLC*, 2006 WL 8437758, at *1 (S.D. Ala. Nov. 21, 2006) ("The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. The court may deny a motion in limine when it "lacks the necessary specificity with respect to the evidence to be excluded.").

### D. <u>*Whether Evidence of Prior Lawsuits Should be Excluded*</u>

The final issue is whether other lawsuits filed against PVGC should be excluded at trial. Defendants claim that there is a general rule in the Eleventh Circuit that evidence of other lawsuits filed against a defendant is generally not probative in the absence of some evidence of a widespread pattern and practice. *See, e.g.*, *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000) ("[W]e do not find any merit to Palmer's argument that the district court abused its discretion in excluding evidence of the existence of the other lawsuits against the University System. The complaints that she sought to introduce involved different decision-makers, different departments, and different hiring processes.").

Defendants take issue, for example, with Mr. Mick's affidavit (which Plaintiff relied on at the summary judgment stage) where he claims that PVGC "faces litigation" because of a "repeated failure to properly manage and timely pay its subcontracts and suppliers." [D.E. 94-1]. Defendants argue that these cases are materially different from the facts in this lawsuit and that none of the other actions

resulted in any adverse judgments. Defendants also claim that none of the cases proceeded to trial and that they lack any relevance to the question presented – whether Plaintiff overbilled for construction work. Defendants therefore conclude that the inference Plaintiff seeks to introduce at trial is unduly prejudicial and that any evidence of prior lawsuits against PVGC should be excluded.

Plaintiff's response is two-fold. First, Plaintiff argues that evidence of other lawsuits may be admissible even if the facts are materially dissimilar. Second, Plaintiff claims that the cases that it seeks to introduce at trial involve substantially similar facts. Plaintiff asserts that each case includes (1) the same Projects, (2) PVGC's failure to tender owed amounts, and (3) a similar time frame.[8] Because the lawsuits are similar, and the evidence is probative of PVGC's repeated failure to pay subcontractors, Plaintiff concludes that Defendants' motion must be denied.

Evidence of other lawsuits is generally considered to be inadmissible hearsay. *See In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 505234, at *5-6 (S.D. W. Va. Feb. 5, 2014) (citing *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993)); *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 369 n.2 (11th Cir. 2009) (excluding a complaint filed in a prior lawsuit against defendant as hearsay); *Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 44-45 (5th Cir. 1989) (affidavit summarizing copies of notices of pending litigation against the defendant properly excluded as hearsay); *Amegy Bank Nat'l Ass'n v. DB Private Wealth Mortg., Ltd.*, 2014 WL 791505, at *2 (M.D. Fla. Feb. 24, 2014) (excluding any "references to allegations,

---

[8]    Plaintiff claims that three prior cases – *Coastal, Ecolifc, and H&E* – are substantially similar to the facts presented.

petitions, complaints or claims against [defendant] in other suits" as hearsay); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 2013 WL 1155420, at *7 (S.D.N.Y. Mar. 20, 2013) (excluding "[r]eferences to other lawsuits including their factual allegations and evidence").

In this case, Plaintiff has not explained in any meaningful way how prior lawsuits against PVGC have any probative value. Plaintiff merely refers to three cases and makes conclusory arguments that they are substantially similar to the facts presented. Indeed, Plaintiff only devotes about one sentence for each related case in explaining their relevancy. And rather than presenting specific arguments with supporting evidence, Plaintiff merely suggests that the cases are similar and leaves it to the Court to determine if they are distinguishable or not.

However, we decline to do Plaintiff's work and investigate the facts of each case to determine their relevancy. If the cases are as similar as Plaintiff suggests then Plaintiff should have set forth specific arguments with supporting evidence. Plaintiff's response – as it stands now – is quite conclusory, incomplete, and fails to demonstrate that the facts of other lawsuits are similar to the facts presented. And "[e]ven if [P]laintiff could demonstrate some probative value from allegations in other lawsuits, presenting evidence of these other cases would lead to a series of mini-trials that would likely confuse and mislead the jury from the task at hand of evaluating plaintiff's claims in this case and result in a waste of time and judicial resources." *Smith v. E-backgroundchecks.com, Inc.*, 2015 WL 11233453, at *2 (N.D. Ga. June 4, 2015). If that was not enough of a reason to grant Defendants' motion, "the minimal

value, if any, of such proof is substantially outweighed by the risk of unfair prejudice to [PVGC] arising from the admission of evidence of allegations in other lawsuits filed against it." *Id.* (citing *ushing v. Wells Fargo Bank, N.A.*, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) (noting that generally, "evidence of other lawsuits is not normally relevant and not permitted"); *Williams v. Asplundh Tree Expert Co.*, 2006 WL 2868923, at *2 (M.D. Fla. Oct. 6, 2006)). Therefore, Defendants' motion to exclude evidence of prior lawsuits is **GRANTED**. *See Godwin v. Burkhalter*, 2013 WL 4544313, at *1 (M.D. Ala. Aug. 27, 2013); *In re Ethicon*, 2014 WL 505234, at *6.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion in limine [D.E. 106] is **GRANTED in part** and **DENIED in part**:

A. Defendants' motion to exclude all evidence of Plaintiff's lost profits claim is **DENIED**.

B. Defendants' motion for an adverse inference is **DENIED**.

C. Defendants' motion to exclude any testimony of Plaintiff's witnesses to the extent that they seek to testify on the percentages of completion found in Plaintiff's payment applications is **DENIED** with leave to renew at trial.

D. Defendant's motion to exclude evidence of prior lawsuits against PVGC is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of November, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge